IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OMEGA DEMOLITION CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-cv-01288 |
| ) | |
| TRAVELERS PROPERTY CASUALTY OF ) | Judge Andrea R. Wood |
| AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

In July 2009, a barge leased by Plaintiff Omega Demolition Corporation ("Omega") was damaged and Omega submitted a claim to its insurer, Defendant Travelers Property Casualty of America ("Travelers"). Travelers denied Omega's claim. Over four years later, Omega filed suit alleging that Travelers wrongfully denied coverage. Now, Travelers moves the Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) based on affirmative defenses it has asserted. (Dkt. No. 29.) Specifically, Travelers argues that Omega's suit is barred by a provision in the relevant policy that limits the time in which suit may be filed against Travelers. Omega, on the other hand, argues that Travelers breached its duty to defend Omega and thus it is estopped under Illinois law from raising the suit limitation defense.

For the reasons discussed below, the Court finds that Travelers had the right but not the duty to defend Omega. Therefore, the estoppel doctrine does not apply. Furthermore, Travelers is entitled to judgment in its favor, as there are no material issues of fact to be resolved and it is apparent that Omega's claim is time-barred. Accordingly, the Court grants Travelers's motion and enters judgment in its favor.

**BACKGROUND**

Omega's Amended Complaint seeks to recover insurance proceeds from Travelers based on an occurrence on the Fox River in July 2009, when barges and other equipment Omega leased from a third party, Sunflower Enterprises, LLC ("Sunflower"), sustained damages while performing demolition work. (Am. Compl. ¶ 15, Dkt. No. 16.) As part of its leasing agreement with Sunflower, Omega was required to obtain property insurance for the barges. (*Id.* ¶ 8.) Omega ultimately obtained this insurance under a policy issued by Travelers that included commercial property and inland marine coverage (the "Policy"). (*See* Ex. A to Def.'s Memo., Dkt. No. 30-1.)[1]

Both coverage parts included language limiting the time in which Omega could bring a lawsuit against Travelers based on the Policy. The commercial property portion of the Policy indicated:

> No one may bring legal action against us under this Coverage Part unless:
>
> 1. There has been full compliance with all of the terms of this Coverage Part; and
>
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(*Id.* at 14-15.) The commercial property section was also subject to the requirement that "[t]he 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part." (*Id.* at 100.) The Policy language for the inland marine coverage stated:

> No one may bring legal action against us:

---

[1] Omega alleged in its original complaint that it never received a copy of the Policy. (Compl. ¶ 13, Dkt. No. 1-1.) In its Amended Complaint, however, Omega claims that it received a copy of the Policy no later than September 17, 2009. (Am. Compl. ¶ 19, Dkt. No. 16.)

>1. Until there has been full compliance with all of the terms of this Coverage Part; and
>
>2. More than 2 years after you first have knowledge of the direct loss or damage. But we will extend this 2 year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

(*Id.* at 94-95.) Both coverage parts of the Policy further provided that "[Travelers] may elect to defend you against suits arising from claims of owners of property. [Travelers] will do this at [its] expense." (*Id.* at 27, 77.)

The Policy also imposed certain duties on the insured in the event of a loss. Among other things, the insured was required to "[i]mmediately send [Travelers] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit," and "[c]ooperate with [Travelers] in the investigation or settlement of the claim." (*Id.* at 76.)

On August 12, 2009, Omega submitted a claim to Travelers based on the damage to the leased barges. (Am. Compl. ¶ 16, Dkt. No. 16.) Travelers denied Omega's claim on August 21, 2009, stating that it was "not covered by the [P]olicy." (*Id.* ¶ 17.) In 2010, Sunflower initiated arbitration proceedings against Omega in connection with the damage to its barges. (*Id.* ¶ 20.) In April 2013, Sunflower obtained an arbitration award against Omega in the net amount of $363,794.99. (*Id.* ¶ 22.) Travelers did not defend Omega or pay for the costs of Omega's defense during the arbitration proceedings. (*Id.* ¶ 21.)

On January 15, 2014, Omega filed a complaint against Travelers in the Circuit Court of Cook County, Illinois based on Travelers's denial of Omega's claim. After Travelers removed the case to this Court on the basis of diversity of citizenship,[2] Omega filed an Amended

---

[2] Omega is an Illinois corporation with its principal place of business in Illinois and Travelers is a Connecticut corporation with its principal place of business in Connecticut. (Am. Compl. ¶ 4, Dkt. No. 16.) Omega is seeking in excess of $376,759.99. (*Id.*) Because there is complete diversity between the

Complaint pleading four counts: Declaratory Judgment, Estoppel, Breach of Contract, and Bad Faith Insurance Practices. Omega generally seeks declaratory relief and damages based on losses it claims to have suffered in connection with damages to the barges Omega leased from Sunflower, including the expenses Omega incurred during the arbitration proceedings. In response to Omega's suit, Travelers filed its Answer to First Amended Complaint and Affirmative Defenses. (Dkt. No. 19.) Two of its affirmative defenses assert that the Policy's language bars Omega's suit because it was not filed within two years of Omega's loss. (*Id.* at 11-12.) Omega, in turn, denies that the limitation defenses bar the Complaint and asserts that Travelers is estopped from asserting any policy defenses to deny coverage because Travelers breached its duty to defend Omega in the arbitration proceeding.

## DISCUSSION

By way of a Rule 12(c) motion for judgment on the pleadings, a party may seek judgment on the basis of an affirmative defense after the parties have filed the complaint and answer but before discovery. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, a Rule 12(c) motion should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support [its] claim for relief." *Id.* (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). In deciding such a motion, the Court must view the pleadings in the light most favorable to the non-moving party. *See Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

---

parties and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00, this Court has original jurisdiction over this matter. *See* 28 U.S.C. §§ 1332, 1441.

The pleadings that may be considered on a Rule 12(c) motion include the complaint, the answer, and any written instruments attached to them as exhibits. Fed. R. Civ. P. 10(c); *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Courts must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Jafri v. Chandler LLC*, 970 F. Supp. 2d 852, 855 (N.D. Ill. 2013). Documents attached to a Rule 12(c) motion are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claim. *See Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Here, the Policy was referenced in the Amended Complaint and is central to Omega's claim; although Omega did not attach the Policy to its Complaint, Travelers filed it as part of its Motion for Judgment on the Pleadings. Accordingly, the Court may consider the terms of the Policy in adjudicating this motion. *See id.*

**I.      Estoppel**

As a threshold issue, Omega contends that Travelers is estopped from raising its contractual limitation defense.[3] The estoppel doctrine applies when liability insurers have breached their duty to defend. *Emp'rs Ins. of Wasau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134-35 (Ill. 1999). Under that doctrine,

> an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage.

---

[3] The parties agree that the substantive law of the State of Illinois law applies. (*See* Def.'s Mem. at 5, Dkt. No. 30; Pl.'s Resp. at 5, Dkt. No. 28.)

*Id.* However, the estoppel doctrine "only applies when an insurer has breached its duty to defend. . . . Estoppel does not apply if the insurer had no duty to defend . . . ." *Fairmount Park, Inc. v. Travelers Indem. Co.*, 982 F. Supp. 2d 864, 870 (S.D. Ill. 2013) (citations omitted); *see also Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 353 F. Supp. 2d 966, 971 (N.D. Ill. 2005) ("It is well established under Illinois law that estoppel applies only when there is a duty to defend *and* that duty has been breached.") (emphasis in original). Travelers contends that it had no duty to defend, and thus it is not estopped from raising the Policy's suit limitation provisions as a defense.

The language of the Policy determines whether Travelers had a duty to defend. Insurance policies are governed by the same rules that apply to other contracts. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). A court's function is to ascertain and give effect to the intent of the parties as expressed in the policy language. *Id.* To determine that intent, the policy must be read as a whole, rather than in isolated parts, and with the assumption that every provision was intended to serve a purpose. *Id.* at 1004. Policy provisions that are clear and unambiguous must be applied as written, with each term afforded its plain meaning. *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006). Ambiguous provisions, on the other hand, are construed liberally in favor of coverage. *Founders Ins. Co.*, 930 N.E.2d at 1004. A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning, can suggest creative possibilities as to its intent, or because a term is not defined. *Nicor, Inc.*, 860 N.E.2d at 286. Rather, a policy term is ambiguous only where the term is susceptible to more than one reasonable interpretation. *Id.*

Here, the language in the Policy is unambiguous that Travelers had no binding duty to defend. The only specific language in the Policy that pertains to a duty to defend states that

Travelers "may elect to defend [the insured] against suits arising from claims of owners of property." (*See* Ex. A to Def.'s Memo. at 27, 77, Dkt. No. 30-1.) The use of the word "may" indicates that Traveler's assumption of the insured's defense is discretionary, not mandatory. Furthermore, the conjunction of the word "elect" with the word "may" reinforces this conclusion, as the word "elect" in its common usage means to choose a particular option. This language clearly and unambiguously establishes that Travelers had the right, but not the obligation, to assume the defense of its insured against suits arising from claims of property owners. *See, e.g., Lear Corp. v. Johnson Elec. Holdings, Ltd.*, No. 02 C 6704, 2003 WL 21254253, at *8 (N.D. Ill. May 30, 2003) ("If there was a mandatory duty to defend, it is difficult to imagine how [an insurer] would have the liberty to 'elect' not to undertake take it"); *Genaeya Corp. v. Harco Nat'l Ins. Co.*, 991 A.2d 342, 349 (Pa. Super. Ct. 2010) (policy language indicating that insurer "may elect to defend" unambiguously conveyed that insurer had the right, but not the duty, to defend); *Stadium Lincoln-Mercury, Inc. v. Heritage Transport*, 826 N.E.2d 332, 337 (Ohio Ct. App. 2005) (policy language stating "[w]e may elect to defend you against suits arising from claims of owners or property" "unambiguously stated that [insurer] has the right, but not the duty, to defend [insured] from suit"). *See also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 536 F.2d 730, 736 (7th Cir. 1976) ("Even the right to assume control of the defense carries with it no duty to participate in the defense.").

Omega argues that taken as a whole, the following policy language creates ambiguity regarding Travelers's duty to defend: (1) that Omega must inform Travelers of any "claim" or "suit" against Omega by providing it with any "legal papers;" (2) that Omega must cooperate in the "settlement" of such a "claim;" (3) that Travelers "may" defend Omega; and (4) that Travelers "will" defend Omega at its own cost. According to Omega, this language compels a

7

result similar to that in *Bedoya v. Illinois Founders Insurance Company*, 688 N.E.2d 757 (Ill. App. Ct. 1997). In *Bedoya*, a plaintiff bar owner brought an action seeking coverage from its defendant insurer for liability under the Illinois Dram Shop Act. *Id.* at 759. The trial court found, among other things, that the insurer breached its duty to defend and was estopped from asserting defenses to coverage. *Id.* On appeal, the insurer contended that the policy contained no duty to defend at all. *Id.* The appellate court noted that there was no policy language that clearly provided for a duty to defend, but nonetheless considered a number of policy provisions that bore on the issue:

> [T]he company shall not be obligated to pay any claim or judgment ***or to defend any suit*** after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
>
> \* \* \* \* \* \*
>
> The company will pay, in addition to the applicable limit of liability;
>
> (a) * * * all costs taxed against the insured ***in any suit defended by the company***
>
> \* \* \* \* \* \*
>
> The insured shall cooperate with the company and, upon the company's request, assist in making settlements, ***in the conduct of suits*** and in enforcing any right of contribution or indemnity * * *; and the insured shall attend hearings and trials and assist in securing and giving evidence and in obtaining the attendance of witnesses."

*Id.* at 762 (emphasis added in original). The appellate court found that these terms "could be reasonably read to either provide only a duty to indemnify or provide both a duty to defend and a duty to indemnify." *Id.* Construing this ambiguity in favor of the insured, the appellate court affirmed the trial court's finding that the insurer had a duty to defend. *Id.*

But *Bedoya* is distinguishable here. The policy at issue in *Bedoya* did not specify whether the insurer had a right, duty, or option to defend its insured.[4] In contrast, as discussed above, the Policy in this case unambiguously states that Travelers "may elect to defend you against suits arising from claims of owners of property." Moreover, contrary to Omega's suggestion, the Policy provision stating that Travelers "will" defend the insured at its expense is unambiguous as well: read in conjunction with the language of the preceding sentence, the language regarding payment of expenses plainly indicates that should Travelers "elect" to assume the defense, it "will" do so at its own expense. In other words, Travelers's obligation to pay defense costs is conditioned upon its decision to assume the insured's defense. Finally, the policy language requiring the insured to provide legal documents regarding a lawsuit to Travelers and to cooperate with Travelers in settlement cannot be read as imposing a duty on Travelers. Rather, these provisions are consistent with Travelers having the right, but not the duty, to defend its insured—in order for Travelers to exercise this right, it must be timely notified of claims or lawsuits and it must have the insured's cooperation should it choose to defend the insured.

In sum, the Court finds that the Policy does not include a duty to defend. *See Selective Ins. Co. of S.C. v. City of Charleston, Ill.*, No. 06-CV-2203, 2007 WL 3129578, at *8 (C.D. Ill. Oct. 24, 2007) ("[W]here the plain language of a policy does not include a duty to defend, a court cannot read such a duty into the policy."). Because the Policy does not include a duty to defend, the rule of estoppel does not apply as a matter of law. *See Emp'rs Ins. of Wasau*, 708

---

[4] In fact, the policy language in *Bedoya* indicating that the insurer was "not . . . obligated to . . . defend any suit after the applicable limit of the company's liability has been exhausted" suggests, through negative implication, that the insurer in fact was obligated to provide a defense to the insured prior to exhaustion of the insurer's liability limit.

N.E.2d at 1135 ("Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend").[5]

## II. Contractual Suit Limitation Provision

The Court now turns to Travelers's argument that Omega's suit is barred by the Policy's contractual suit limitation provision. Courts applying Illinois law enforce contractual suit limitation provisions as valid and reasonable conditions precedent to recovery under an insurance policy. *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 905 (Ill. 1996); *Foamcraft, Inc. v. First State Ins. Co.*, 606 N.E.2d 537, 539 (Ill. App. Ct. 1992). Failure to file suit within the limitation period provided by an insurance policy precludes an insured from recovering under the policy and subjects its suit to dismissal. *See, e.g., Koclanakis*, 899 F.2d at 677; *Foamcraft, Inc.*, 606 N.E.2d at 539-40.

The contractual limitation provisions at issue here require an action to be brought within two years after the date on which the direct physical loss or damage occurred, with this limitation period extended by the number of days between the date when the proof of loss is filed and the date when Travelers denies the claim. (Ex. A to Def.'s Mem. at 14-15, 94-95, 100, Dkt. No. 30-1.) Omega's date of loss was in or around July of 2009. (Am. Compl. ¶ 15, Dkt. No. 16; Ans. to Aff. Defenses ¶ 2, 7, Dkt. No. 22.) Omega submitted its claim on August 12, 2009 and Travelers denied the claim on August 21, 2009. (Am. Compl. ¶ 17, Dkt. No. 16; Ans. to Aff. Defenses ¶¶ 3, 8, Dkt. No. 22.) Omega filed its lawsuit on January 15, 2014. (Compl., Ntc. of Removal Ex. A, Dkt. No. 1-1; Ans. to Aff. Defenses ¶¶ 4, 9, Dkt. No. 22.) Thus, even taking into account the

---

[5] Omega raises additional arguments based on language included in the insurance certificates that Travelers issued to Omega. As conceded by Omega, however, these certificates "do not indicate whether the Policy includes both a duty to indemnify and a duty to defend or only one of them," and refer back to the Policy for the terms of coverage. (*See* Pl.'s Resp. at 6-7 and Ex. A, Dkt. Nos. 37, 37-1.) Accordingly, the insurance certificates do not affect the Court's analysis.

Policy's tolling provision, Omega waited over two years from the denial of its claim to file suit. Accordingly, its lawsuit is barred under the Policy's suit limitation provision.

**CONCLUSION**

For the reasons stated above, the pleadings demonstrate that Omega cannot prove any facts that would support its claim for relief. Thus, the Court grants Travelers's Motion for Judgment on the Pleadings. (Dkt. No. 29.) The Clerk of Court is directed to enter judgment in favor of Travelers pursuant to Federal Rule of Civil Procedure 58.

ENTERED:

Dated: June 19, 2015

_____

Andrea R. Wood
United States District Judge